IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JUDY A. MASSEY, | : | |
| | : | |
|    Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. |
| | : | **3:07-CV-3 (CDL)** |
| MICHAEL J. ASTRUE[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
|    Defendant. | : | |

_____

**RECOMMENDATION**

The plaintiff herein filed an application for disability insurance benefits on February 1, 2002,

and an application for Supplemental Security Income benefits on January 14, 2002.  The

applications were denied initially and upon reconsideration; plaintiff requested a hearing before

an Administrative Law Judge.  On July 14, 2003, the ALJ denied plaintiff's claim.  On May 12,

2004, the Appeals Council vacated the hearing decision and remanded the case for further

proceedings and a new hearing.  A new hearing was held on April 11, 2005, with a supplemental

hearing being held on December 7, 2005.  In a decision dated August 18, 2006, the ALJ again

denied plaintiff's claims.  The Appeals Council affirmed the decision, making it the final

decision of the Commissioner.   The plaintiff subsequently filed an appeal to this court.

Jurisdiction arises under 42 U.S.C. § 405(g).  All administrative remedies have been exhausted.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security
and should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this
action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether

the Commissioner's decision is supported by substantial evidence and whether the

Commissioner applied the correct legal standards to the evidence.  Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's factual findings are deemed conclusive if

supported by substantial evidence, defined as more than a scintilla, such that a reasonable person

would accept the evidence as adequate to support the conclusion at issue.  Cornelius v. Sullivan,

936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971).  In

reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh

the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the

evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is

supported by substantial evidence."  Bloodsworth, 703 F.2d at 1239.  "In contrast, the

[Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to

apply the correct law or to provide the reviewing court with sufficient reasoning for determining

that the proper legal analysis has been conducted mandates reversal."  Cornelius, 936 F.2d at

1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine

whether a claimant is entitled to Social Security disability benefits.  The Secretary employs the

following step-by-step analysis in evaluating a claimant's disability claims:  (1) whether the

claimant is engaged in gainful employment;  (2) whether claimant suffers from a severe

impairment which has lasted or can be expected to last for a continuous period of at least twelve

months;  (3) whether claimant suffers from any of the impairments set forth in the listings of

impairments provided in Appendix 1;  (4) whether the impairments prevent claimant from returning to his previous work;  and (5) whether claimant is disabled in light of age, education, and residual functional capacity.  Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience.  20 C.F.R. § 404.1520(d).

The ALJ determined that plaintiff had "severe" impairments of varicose veins; depression; and degenerative arthritis, but was not disabled as she could perform her past relevant work as a receptionist and telephone answerer.

The relevant medical evidence shows office notes dated August 1999 that reflect plaintiff's complaints of right knee and lower right leg pain due to varicose veins and osteoarthritis, which had been occurring for "several months." (Tr. 175).  Plaintiff reported she had undergone vein surgery about 30 years previously, but had no consistent care since that time. *Id.* She was prescribed thigh-high TED Hose and advised to elevate and rest her feet and legs, above her heart, 3 - 4 times a day. (Tr. 174, 175).  In March 2000, it was noted that plaintiff was referred to Walton County Mental Health for evaluation of depression and anxiety, that she had an enlarged thyroid, and that she needed to work in a smoke free environment. (Tr. 155,  156, 162). February 1999 Clinic notes document plaintiff's diagnoses of anxiety/adjustment disorder; GERD; and irritable colon, for which treatment included Zoloft, Atarax, and Flagyl. (Tr. 154). Clinic and hospital notes dated from January 2001 through April 2002, show plaintiff suffered from sinus infection; gastrointestinal bleeding due to gastric ulcer and diverticulosis; dysphagia

due to esophageal stricture and esophagitis; urinary tract infection; varicose vein related pain in her knees and legs; stiffness after sitting 30 minutes; fibromyalgia with classic trigger points; gastroesophageal reflux; gastritis; duodenitis; and sore throat. (Tr. 122-124, 127, 128, 130, 132-134, 137, 139-143, 144, 147). During this period, plaintiff was seen five times by Gordon Tanner, Jr., M.D., who treated her for her esophageal and intestinal problems. (Tr. 182-187). On February 23, 2001, Dr. Tanner confirmed esophageal stricture, requiring dilation, and in May 2001, he noted she was using a "proton pump inhibitor" for treatment of diarrhea. (Tr. 184, 185). Also, Clinic records dated April 2005, show that plaintiff suffered from contact dermatitis, swelling of her left leg and upper inner thigh with two round lesions, and her medications were listed as Zoloft, Prevacid, Seroquel, Clarinex, Omnicef, and Indocin. (Tr. 523, 526).

Extensive medical records from Gwinnett Hospital dated from April 12, 2000 through April 2005 document five esophageal dilations and Mrs. Massey's treatment for a right knee injury. (Tr. 363-502). The esophageal dilation procedures are documented as occurring on January 31, 2001; July 18, 2001; February 18, 2002; June 19, 2003; and May 11, 2004. (Tr. 366-367, 387-388, 402-403, 430- 431, 452-453, 497-498, 500-501).

On April 12, 2000, plaintiff reported to the emergency department after injuring her right leg and knee. (Tr. 489-496). X-rays revealed mild degenerative spurring about the right knee, and in addition to an Ace bandage and prescriptions for Darvocet and Medrol Dose pak, plaintiff followed up with Dr. Indech, who referred her to a course of physical therapy. (Tr. 467-469, 473-488, 494).

After six physical therapy sessions, plaintiff reported being frustrated with her progress and felt that the exercises were contributing to her symptoms of poor balance, pain, and swelling.

(Tr. 467, 474). An additional x-ray of the right knee on June 4, 2000 revealed findings consistent with a remote sprain; complete radial tear of the extreme posterior horn; moderate Grade II degenerative changes throughout the posterior body and proximal posterior horn; moderate arthritic changes involving the medial knee compartment; and moderate to severe degree of cartilaginous loss in the medial and central third of the medial knee compartment with underlying subchondral edema and sclerosis noted involving the medial aspect of the medial femoral condyle and medial tibial plateau. (Tr. 472).

Plaintiff continued followup treatment with Neil Groff, M.D., through at least August 2005. (Tr. 557-573, 576-577). On April 13, 2005, relative to a visit to Walton Regional Medical Center, Dr. Groff diagnosed superficial phlebitis, and prescribed Ibuprofen 200 mg, three times a day and advised Mrs. Massey to "elevate her leg and apply heat." (Tr. 567, *See also* Tr. 530, 531). He noted her other medications as Zoloft, Seroquel, and Hydroxyzine HCL. (Tr. 566). When he saw plaintiff again a few days later, she was still complaining of left leg pain, and Dr. Groff's examination revealed "cord formation in the vein from the vein being clotted off," and he felt compression hose would help her do better. (Tr. 564). Dr. Groff did not see plaintiff again until July 26, 2005, when she complained of dizzy spells with nausea, low back pain and suprapubic discomfort. (Tr. 561). He noted specific diagnoses of Phlebitis and Thrombophlebitis of Superficial Vess," positional vertigo, and intertriginous rash. *Id.*

By August 2005, plaintiff was not feeling any better, and Dr. Groff recorded that she felt irritable, "more nervous," and he observed "a slight head bobbing tremor." (Tr. 558). He felt that some of her problems were caused by a reduced adjustment of her Zoloft and advised that she speak with her psychiatrist about it. (Tr. 559). Dr. Groff ordered a lumbar spine x-ray in August

5

2005  which revealed degenerative disc disease with subluxation at L4-5, T11-T12, L4-L5 and

facet joint hypertrophy at L5-S1. (Tr. 557). He interpreted the findings as showing "significant

degenerative changes in her lumbar spine which may be responsible for her ongoing back pain."

(Tr. 576). When Dr. Groff saw plaintiff again in November 2005, she complained of irritable

bowel issues, low back pain, and low abdominal pain. (Tr. 570). Dr. Groff suspected mild

diverticulitis and prescribed Augmentin, but he also listed her ongoing dizziness, phlebitis and

thrombophlebitis, as well as urinary tract infection. (Tr. 570).

Plaintiff received mental health treatment at Advantage Behavioral Health Services from

February 2003 through October 2005. (Tr. 353-362, 517-522, 547-575), reflecting regular

follow-up for depression, and her symptoms of insomnia, anxiety, fatigue, anxious mood,

irritability, and impaired concentration. (Tr. 517, 547, 554).

At the request of the State agency, plaintiff underwent consultative physical examinations with

Palghat Mohan, M.D., on April 23, 2002, and Dianne Bennett-Johnson, M.D., on February 3,

2005. (Tr. 188-195, 503-507, *See also* Tr. 544-546).  Plaintiff also was evaluated by

psychologist, Arleen Turzo, Ph.D., on May 1, 2002. (Tr. 196- 201).

Plaintiff reported to Dr. Mohan that she forgets easily, has arthritis in the back of her legs and

feet, and that her right knee "gives away even while walking at times." (Tr. 188). She also

informed him of her right knee dislocation, esophageal strictures, esophagitis, diverticulosis, and

bilateral varicose veins. *Id.* Dr. Mohan's examination was unremarkable for any physical

impairments, and his diagnoses were mild degenerative joint disease; superficial varicosities,

bilaterally; and arthritic changes at L4-5, according to x-ray findings. (Tr. 190-195).

Plaintiff described her symptoms to Dr. Bennett-Johnson and reported treatment for anxiety

and depression. (Tr. 503). Upon examination, Dr. Bennett-Johnson found decreased range of motion in the cervical rotation, lumbar flexion, lateral bending, and right knee flexion. (Tr. 504). She also found trace edema of the lower legs; moderately severe telangiectasias of right more than left leg with varicosities from right inguinal area; diminished strength of left lower extremity; multiple tender areas without true trigger points; and diminished sensation in stocking-glove distribution of her feet. *Id.* Based on her examination, Dr. Bennett- Johnson completed an RFC form, indicating that during a work-day, plaintiff could stand/walk for a total of four hours; sit for a total of 4 hours; frequently balance; occasionally climb, stoop, or crawl; and never crouch. (Tr. 505, 506). She also indicated plaintiff had limitations for pushing/pulling with her legs. (Tr. 506).

Upon further inquiry from ALJ Baird, Dr. Bennett-Johnson clarified that her examination of Mrs. Massey was "significant for diminished lumbar range of motion and knee flexion." (Tr. 544, *See also* Tr. 350, 351, 512-516). She explained that her completion of the medical assessment form was a combination of examination results and plaintiff's report. *Id.* Thus, based on plaintiff's report that she can carry two full grocery bags and lift a 5 year old child, she estimated that she could lift 50 pounds occasionally and 25 pounds frequently. (Tr. 544, 545).

In the examination with Dr. Turzo, plaintiff reported that she had been feeling depressed for the past 6-7 months, due to chronic pain and inability to do things as before. (Tr. 196). She also reported that she has poor memory, difficulty concentrating, and poor sleep, and that she dislikes any type of noise, including the television and music. (Tr. 196, 197). Plaintiff described her day as consisting of working on household projects, crafts, doing yardwork, preparing simple meals, and grocery shopping when able. (Tr. 197).

During the mental status examination, Dr. Turzo observed that plaintiff's speech was

"excessively detailed and slow with a whining quality," and that she appeared to be "below

average intelligence." (Tr. 198). Her affect was noted as "tearful." *Id.* Results of the Weschler

Intelligence Scale - Third Edition revealed a Verbal IQ of 84, a Performance IQ of 76, and a Full

Scale IQ of 78, classified as "Borderline." (Tr. 198). Other test results showed 8th grade reading

and spelling skills; 5th grade arithmetic skills; and "mildly immature or malfunctioning visual

motor perception or coordination." (Tr. 200). However, Dr. Turzo felt that plaintiff's

"compromised motivation and persistence likely suppressed scores to some degree," and that

validity was only considered "fair." (Tr. 198, 200). Dr. Turzo also commented that plaintiff "did

not appear to be psychologically oriented and has likely somatized psychological issues." (Tr.

200). He summarized that:

> . . . Intellectual ability appears sufficient to allow the client to be able to perform
> mildly-detailed tasks. She . . . would probably be able to perform basic written work
> as part of her duties. She . . . would likely be able to perform basic tabulations . . . as
> part of her duties. . . . she would probably be able to follow mildly detailed instructions
> satisfactorily. . . .

(Tr. 201). Her diagnoses were Adjustment Disorder with Depression and Anxiety, Moderate

(309.28); Coping Style Affecting Medical Conditions (316). (Tr. 201).

***Remand from Appeals Council***

Plaintiff contends that the ALJ did not comply with the order of the Appeals Council

remanding the case for further consideration. The Appeals Council directed the ALJ to

> obtain additional evidence concerning the claimant's impairments, including all
> outstanding records from her treating medical sources, in order to complete the
> administrative record in accordance with the regulatory standards regarding consultative
> examinations and existing medical evidence....The additional evidence will also include,
> **if available**, a consultative mental status examination and medical source statements
> about what the claimant can still do despite an impairment.

(Tr. 278)(emphasis added).

The ALJ, however, did not order a consultative mental evaluation following remand, and did not provide an explanation why one was not ordered. Plaintiff and the Commissioner disagree as to what the phrase "if available" means in the Appeals Council order to remand. The Commissioner argues that is was not an unqualified directive for the ALJ to order a second consultative psychological examination. The plaintiff asserts that it was mandated for the ALJ to get a second consultative psychological examination.

Upon remand, the ALJ used the previous consultative psychological examination from Dr. Turzo from May of 2002. In the original denial of benefits, the ALJ did not assess plaintiff's mental impairments at all, as he did not find any mental impairments to be "severe." (Tr. 260-266). After remand, the ALJ did consider the consultative psychological examination and the other medical evidence of plaintiff's mental impairments, used those limitations in various hypotheticals to the vocational expert, and found several of the limitations valid in assessing the plaintiff's residual functional capacity.

In the specifics of this case, where the ALJ did not consider the original consultative psychological examination at all in the original denial of benefits, the undersigned believes that it was not mandated to order a new consultative psychological examination. The ALJ did consider the original examination as well as additional evidence submitted regarding plaintiff's mental limitations, and this consideration fulfilled the requirements of the Appeals Council order for remand.

***Residual Functional Capacity***

Plaintiff contends that the ALJ improperly assessed her residual functional capacity and did

not include all of her limitations in the hypothetical posed to the vocational expert, specifically not including an assessment of plaintiff's ability to sit during a workday.

The ALJ called a vocational expert to testify at both of the hearings that were held after remand by the Appeals Council. At the first hearing, the ALJ posed a hypothetical that included a limitation to standing and walking four hours during the day and limited to sitting four hours in an eight-hour day, noting that plaintiff would have to alternate sitting and standing. (Tr. 23, 25, 662, 647, 668). The vocational expert testified that a person could perform the receptionist job and answer telephones, as there was no need to be seated to answer the telephone. (Tr. 665). At the supplemental hearing, the vocational expert confirmed his testimony after a hypothetical including a limitation that plaintiff could only stand up to four hours in an eight hour day. (Tr. 693).

The ALJ clearly found the plaintiff retained the residual functional capacity to perform her past relevant work. The plaintiff's assertion that the ALJ committed error in failing to specifically state that plaintiff could sit for four hours in an eight-hour day is not persuasive, as it is obvious by a general reading of the decision and the hearing transcripts that the ALJ included this ability to sit for four hours. If the ALJ had not so found, then he obviously would have concluded that plaintiff was disabled if she could not sit for four hours out of an eight hour day.

Plaintiff also asserts that the ALJ's finding that she could perform her past relevant work did not follow SSR 96-9p. A portion of SSR96-9p states that if an individual is unable to sit for a total of 6 hours in an 8-hour day, the unskilled sedentary occupational base will be eroded. It does not state that it will be eliminated. It is not applicable in this instance because, first of all, the ALJ determined that plaintiff could perform her past relevant work at step four of the

sequential evaluation, and secondly, the ALJ had testimony from the vocational expert that

plaintiff, even with her limitations, could perform her past relevant work.

Plaintiff also takes exception with the ALJ's assessment of her mental limitations. However,

the ALJ directly quoted limitations from Dr. Turzo's report in they hypothetical posed to the

vocational expert. (Tr. 659-660). In response, the vocational expert concluded that nothing in

the hypothetical would preclude the performance of plaintiff's past relevant work as a

receptionist or telephone answerer.

This court may not re-weigh the evidence or substitute its judgment for that of the

Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's]

decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703

F.2d at 1239.

***Vocational Expert/DOT***

In her reply brief (doc. 12), plaintiff also takes exception to the differences between the

vocational expert's testimony regarding the job of receptionist or telephone answerer and the

description in the Dictionary of Occupational Titles (DOT). The DOT describes the job as

sitting for six hours per day, standing or walking for two, which is described as sedentary.

(Exhibit 1 Doc. 12). Plaintiff contends that the ALJ was obligated to comply with the

requirements of SSR 00-4p before relying on the VE's testimony. SSR 00-4p states in relevant

part as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the
> occupational information supplied by the DOT. When there is an apparent unresolved
> conflict between VE or VS evidence and the DOT, the adjudicator must elicit a
> reasonable explanation for the conflict before relying on the VE or VS evidence to
> support a determination or decision about whether the claimant is disabled. At the
> hearings level, as part of the adjudicator's duty to fully develop the record, the

adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

The question is whether remand is warranted when the conflict between the VE's testimony and the DOT is not identified during the hearing or in the ALJ's decision. The testimony of the vocational expert was unchallenged, as plaintiff was represented by counsel at the hearing and the VE was subject to cross examination. Courts that have considered this issue have refused to remand such cases. In short, the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT. *See* Brijbag v. Astrue, 2008 WL276038 (M.D. Fl. 2008); Donahue v. Barnhart, 279 F.3d 441, 446-47 (7th Cir.2002); *see also* Martin v. Commissioner of Social Security, 2006 WL 509393, at 4-5 (6th Cir.2006) (unpublished); Haas v. Barnhart, 2004 WL 396982, at 5-6 (5th Cir.2004) (unpublished); and Lembke v. Barnhart, 2006 WL 3834104, 14-15 (W.D.Wis.2006).

***Step Four***

Plaintiff contends that the ALJ erred in finding that plaintiff could perform her past relevant work as a receptionist/telephone answerer, and that the "grids" direct a finding of disabled. Plaintiff asserts that she met her burden that she could not perform her past relevant work; therefore, the burden shifted to the Commission to show that plaintiff could perform work, but cannot, because the "grids" direct a finding of "disabled."

However, because the undersigned has determined above that the ALJ did properly find that plaintiff could perform her past relevant work, this argument is without merit. There was no

need for the ALJ to progress to step five of the sequential evaluation, and no need to consult the "grids" for a determination of plaintiff's ability to perform work.

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **AFFIRMED**.   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 7th day of February, 2008.

//S Richard L. Hodge
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

msd